IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 FEB 12 PM 4: 17
U.S. DIST... COURT
N.D. OF ALABAMA

ROY H. DRINKARD,

    Plaintiff,

vs.                        CASE NO.: CV-96-J-291-S

WAL-MART STORES, INC.,

    Defendant.

ENTERED
FEB 12 1999

## MEMORANDUM OPINION

This court considered the following pending motions at its February 8, 1999 conference with the parties: Plaintiff's Motion for Summary Judgment (doc. 45); Wal-Mart's Second Counter Motion for Summary Judgment on Count I and Objection to Plaintiff's Summary Judgment Motion (doc. 52); and Plaintiff's Opposition to Wal-Mart's Motion for Summary Judgment (doc. 58). The court has also reviewed voluminous materials filed by the parties and considered the arguments made by the parties at the February 8, 1999 conference.

### I. BACKGROUND

This case concerns the interpretation of one clause in one lease and the question of whether that interpretation by the parties was altered by a later amended lease. The parties entered into a lease for space in a shopping center where the plaintiff is the owner of this shopping center and the defendant here was the lessee. The first of the leases in dispute here was actually the second lease between the parties, for space in the Town Square shopping



center in Cullman, Alabama (the "Town Square" lease). This lease was entered in March, 1986 and expires in the year 2006. Included in this lease was the clause found at ¶31, entitled "Percentage Rent." That clause states that "In addition to Minimum Rent, Lessee shall pay as additional rent ... in each year beginning with the first (1st) Lease Year, the amount equal to one percent (1%) of the amount by which the Gross Sales ... in each Lease Year exceed ... ($17,102,600.00). (Ex. N to defendant's evidentiary submissions in support of its second counter motion for summary judgment, (hereinafter "Town Square lease") at ¶ 31.A. In paragraph D of this clause, the lease defines "Gross Sales" as "gross sales of Lessee, whether such sales be obtained at the Demised Premises or elsewhere in the Shopping Center." ( Town Square lease at ¶ 31.D.) The phrase "the Shopping Center" is marked through and the phrase "Cullman County, Alabama" is hand written above the crossed out term. The notation "OK" also appears in the margin next to where the handwritten words were added.

In 1990, clearly while the Town Square lease was still in effect, the parties executed a third lease for a space in the King Edward Plaza Shopping Center, also owned by the plaintiff. That lease contains the clause:

> "In addition to the Minimum Rent, Lessee shall pay as additional rent ... in each year beginning with the eighth (8th) Lease Year, the amount equal to one-half of one percent (½%) of the amount by which the Gross Sales, as hereinafter defined, in each Lease Year exceed the gross Sales during the seventh (7th) Lease Year ... but in no event shall Percentage Rent be for an amount exceeding One Dollar ($1.00) per square foot ... It is expressly agreed

that no percentage rent shall be due and payable during the first seven (7) Lease Years of the base term.

(Ex. O to defendant's evidentiary submissions in support of its second counter motion for summary judgment, (hereinafter "King Edward lease") at ¶ 31.A. This lease defined Gross Sales as "the entire amount of the actual receipts of Lessee, from all sales or services made or performed from the Demised Premises or elsewhere in the Shopping Center...." (King Edward lease at ¶ 31.D.)

In 1991, the defendant closed down the Wal-Mart at the Town Square Shopping Center and opened a new Wal-Mart, also in Cullman County, at the King Edward location, the subject of the third lease (Ex L to defendant's evidentiary submissions in support of its second counter motion for summary judgment; Ex E to defendant's evidentiary submissions in support of its second counter motion for summary judgment). The Town Square location was vacant for a time period with the defendant trying to sublease the space. Eventually, the defendant opened a "Bud's Discount City" store in this space. (Ex E to defendant's evidentiary submissions in support of its second counter motion for summary judgment.) Wal-Mart has continued to pay the base rent due under the Town Square lease at all times relevant, but has never generated enough gross sales to be required to pay percentage rents under that lease. (Ex E to defendant's evidentiary submissions in support of its second counter motion for summary judgment.)

3

The plaintiff filed suit in 1996 with several claims. However, the only surviving claim this court must decide is one of interpretation of the second lease, and whether the same is affected in any manner by the third lease. The plaintiff claims that he is entitled to percentage rents under the Town Square lease for sales attributable to the King Edward store for each year that store has been operating. The plaintiff contends that the language in the 1986 Town Square lease requires a finding that the defendant must pay percentage rent on all gross sales from the King Edward store, from the first year that store was opened, to the extent that those sales, combined with any sales from the Town Square location, exceed the $17,102,600.00 threshold stated in the Town Square lease. In his motion for summary judgment, plaintiff strenuously argues that radius clauses and modified radius clauses are common in commercial leasing. The plaintiff states that the phrase "elsewhere in Cullman County" includes other stores operated by the defendant anywhere in the county.

The defendant claims that the phrase, when considered in light of the Town Square lease and the King Edward lease, was not intended by the parties to encompass so expansive a definition. Defendant, in its counter motion, argues that the clause in question only applies to sales attributable to the Town Square location. Neither of the parties disputes that the King Edward lease does not contain a clause identical to the one here in dispute. The parties agree that at all times relevant to this suit, no percentage rents are yet due under the King Edward lease as the seven year grace period contained therein had not expired.

4

The parties are in dispute over whether the term "elsewhere in Cullman County" constitutes a radius clause, a modified radius clause, whether the defendant ever enters leases containing radius clauses and the custom and usage of such clauses in the industry. The court finds that under Alabama law, which is binding on this court under the facts of this case, if the contracts are unambiguous, this court does not need to consider what type of radius clause this may be or whether such clauses are common in the industry.

The leases in question here involve the same parties and essentially serve the same purpose. The King Edward lease states the defendant's obligation to pay percentage rent on gross sales attributable to the King Edward store. The plaintiff's underlying contention is that the defendant is obligated to pay rents on gross sales attributable to the King Edward store twice, one under the formula contained in the King Edward lease and again under the Town Square lease .

### III. STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

5

essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Clark & Coats, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts

6

are material and which are irrelevant. *Anderson*, 477 U.S. at 248. All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 477 U.S. at 251-252.

In the case before this court, no real factual dispute exists. Instead, the parties are in disagreement as to what interpretation should be given the phrase at the heart of this suit. Either the parties intended that the clause meant "all sales in Cullman County" or they meant "all sales attributable to the Town Square store in Cullman County."

### III. RULES FOR CONTRACT CONSTRUCTION

When interpreting a contract, a court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state. *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So.2d at 36.

7

Interpretation of an unambiguous contract is a question of law for the court to resolve. *Thomas v. Principle Financial Group*, 566 So.2d 735, 738 (Ala.1990); *Alpine Contsr. Co., v. Water Works Board of the City of Birmingham*, 377 So.2d 954, 956 (Ala.1979). Whether or not a contract is ambiguous is also determined as a matter of law. *Duncan v. Rossuck*, 621 So.2d 1313, 1314 (Ala.1994). General contract law requires a court to enforce an unambiguous, lawful contract, as it is written. *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So.2d 33, 35 (Ala.1998); citing *P & S Business, Inc. v. South Central Bell Telephone Co.*, 466 So.2d 928, 931 (Ala. 1985).

"A court may not make a new contract for the parties or rewrite their contract under the guise of construing it." *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So.2d at 35, citing *Estes v. Monk*, 464 So.2d 103 (Ala.Civ.App.1985). Yet this is what the plaintiff requests this court to do. The parties could not have intended at the time the language "or elsewhere in Cullman County" was handwritten into the Town Square lease to include gross sales from the King Edward store, because that store did not exist. Yet this is the interpretation the plaintiff asks the court to impose on the Town Square lease. Contracts may only be modified by a subsequent agreement of the parties, not an antecedent agreement. *Valley Steel Construction, Inc., v. Addison Fabricators, Inc.*, 658 So.2d 352 (Ala.1994). Clearly, the parties could have incorporated language into the King Edward lease to state that the terms from the Town Square lease would be applied to the gross sales from the King Edwards store, but they did not do so.

8

## IV. DISCUSSION

The King Edwards lease states the conditions for when percentage rents become due from the King Edward store. The King Edward lease states: "In addition to the minimum rent, Lessee shall pay as additional rent ... in each year **beginning with the eighth Lease Year,** the amount equal to one-half of one percent ... , but in no event shall Percentage Rent be for an amount exceeding One Dollar ($1.00) per square foot of the leased building space...." (emphasis added). King Edward lease at ¶ 31.A. This lease specifies that percentage rents due form this store begin in the eighth year of operation. No exceptions to this eighth year caveat are listed in the lease. No one to this lawsuit has stated that when the parties entered this lease, they intended for it to be limited by the earlier lease.

In the Court's first order granting the defendant's motion for summary judgment, the Hon. Sharon Blackburn quoted from Corbin on Contracts:

> A difficult question of interpretation may arise when a second contract deals with the same subject matter as did the first contract made by the same parties, but does not state whether or to what extent it is intended to operate in discharge or substitution, The two contracts must be interpreted together. In so far as they are inconsistent, the later one prevails....

6 Arthur L. Corbin, *Corbin on Contracts*, §1293 (1962 & Supp. 1996). Judge Blackburn held that "a subsequent contract that is inconsistent with a prior contract can modify the prior contract even though it does not refer specifically to the prior contract.... Even though the King Edward lease does not mention the Town Square lease, it addresses the same subject

matter, in part. To the extent that the two leases are inconsistent, the King Edward lease controls." Memorandum Opinion, December 11, 1996 (doc. 30).

This court finds that plaintiff's interpretation of the Town Square clause of "elsewhere in Cullman County" requires this court to find these two leases inconsistent. Clearly, the King Edward store is "elsewhere in Cullman County, " but it is governed by a later lease which makes no reference to the earlier lease. Under this set of fact, this court must find that the King Edward lease controls rents payable from the King Edward store. As such, no percentage rents could have come due at the time this suit was filed (1996, less than seven years after the King Edward lease was entered). In consideration thereof, this court finds that the defendant's Second Counter-Motion for Summary Judgment on Count I (doc. 52) is due to be **GRANTED**.

Further bolstering this court's belief that rents due from the King Edward store must be considered first and foremost in light of the King Edward lease, is the fact that rents due from that store are limited by the square footage of that store. Additionally, the Town Square lease as a whole is very site specific. That document, in reference to percentage rents and gross receipts, is written in terms of the Demised Premises, i.e. that specific location. The King Edward lease is unambiguous. The Town Square lease is ambiguous only to the extent of the meaning of "elsewhere in Cullman County."

Under the Town Square lease, the defendant had to provide to the plaintiff a yearly statement "indicating the amount of Gross Sales ... in the Demised Premises during the

10

immediately preceding Lease Year and the Percentage Rent for such Lease Year, if any." Town Square lease at ¶31.B. *See also* ¶31.C. (stating that Lessor has the right "to inspect Lessee's books of account and records of Gross Sales relating to the **Demised Premises**..." emphasis added). This court finds that the term "elsewhere in Cullman County" means sales of goods and merchandise from the demised premises store, regardless of where in the county those sales occur. This court simply cannot find any way to extend this language beyond the demised premises. This court is bound to give the terms of the contract their clear and plain meaning and to presume that the parties intended what the terms of the agreement clearly state. *Dan Tucker Auto Sales, Inc.,* 718 So.2d at 36.

## V. CONCLUSION

In consideration of all of the above, the court hereby **ORDERS** that the plaintiffs' motion for summary judgment be and hereby is **DENIED** and that the defendant's counter-motion for summary judgment be and hereby is **GRANTED.**

The court finding that no genuine issue of fact remains, and finding no just cause for delay, the court does **ORDER, ADJUDGE** and **DECREE** that judgment is hereby rendered as stated above in favor of the defendant and against the plaintiff.

**DONE** and **ORDERED** this the _12_ day of February, 1999.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE